The first case argued case on the calendar for today, which is number 22-18-26 TAL Properties of Pomona v. Village of Pomona Mr. Ashburn, whenever you're ready Thank you. Good morning. May it please the court, my name is Dan Ashburn. I represent the plaintiff appellants in this case, TAL Properties of Pomona, LLC, and Mr. Abraham Maness This is a case, the primary issue in this case has to do with Rays Judicata, the application of claim preclusion Mr. Ashburn, you're appealing only from, not only, the appeal is from the denial of the motion for reconsideration, correct? The notice of appeal was filed from the motion for reconsideration Not from the underlying dismissal on Rays Judicata grounds It is on that as well. My understanding is the case law is Is on that as well? Yes How is that? Since the order, I don't have it in front of me, but it says simply that it's an appeal from the denial of the motion for reconsideration Yes, Judge, but my understanding is from the case law that the appeal from a motion of consideration from a non-final judgment Will also bring up the same issues, the underlying issues of the judgment, particularly where the judge in the motion for reconsideration Basically reaffirmed his underlying opinion There are cases in my, addressed this primarily in the reply brief What happened in this case was the first order of September the 7th, 2021 Was a dismissal, a granted dismissal of paragraphs 1 through 232, I believe it was On the basis of Rays Judicata And it allowed for amendment of the remaining claims, the remaining paragraphs And you didn't amend at that time and you didn't appeal from that judgment even after it became final, is that correct? The judgment didn't, this was not a complete judgment, this was a split judgment And we, in our letter to the judge, we specifically requested that all deadlines that would include The time to amend, that they would be suspended until after the motion for reconsideration was made You requested that, was that set forth in an order from Judge Halpern? The judge said application granted So the application specifically included that all deadlines would be pushed off He said application granted and then he set a date by which we would need to file a motion of reconsideration But when you were dealing with something as important as a notice of appeal That's, were you well put to rely on that simple statement from Judge Halpern when you asked  There was no judgment entered in this case So I did do some research on this I will remind the court that the order was entered the day before my son passed away And I immediately, as soon as I was able, before I had even completed I made a request to the court specifically to ask that all deadlines would be suspended And I understood his statement, application granted, that that would be the case I did do, after the fact, I did do research and I did come up with a case law I did find the case law that we have in our brief that shows that when there If we had filed a notice of appeal at that time We would have been in a situation where we may have forfeited our claims on the other On the Banks case claims because It wasn't a final judgment as to all of the claims in the case So our desire was to make a motion for reconsideration on the Claims that were dismissed on Ray's judicata If, because I really felt that the standard that the judge applied He clearly misapplied the law in that case I thought there was a possibility if I brought that to his attention Because he used the shorthand language of the, I believe it's the Monin decision I really believed that we could revive those claims and continue with the case Without having to forfeit the other claims by going directly on appeal The other, and those are really large claims They have a lot more factual background for discovery and things like that So we didn't want to go forward with just the Banks claims Then come out two years later and try to bring up the older The claims that came before Banks Because that would really be a mess for the court So that's really the reason that we went that way And I really did believe that the judge had granted Our application to amend After the fact After we got a ruling on the motion for reconsideration And I do believe the case law is in our favor in regards to that That we should have a de novo review of the underlying issues Because in any case it is an issue of law What do you do with the Van Buskirk decision Which indicates that the standard for us on a motion for reconsideration Is abuse of discretion rather than a de novo review How do you distinguish that case? Okay, the cases that the appellees cited I believe including that case Dealt with a Rule 60B type of motion for reconsideration Or even a 59E These were reconsiderations that came after a judgment Or when the person It's not the same case as in this case Where you have a non-final order The court didn't deal with the entire case And therefore we asked a reconsideration of a portion of that So I think that's distinguishable It's a different standard And the cases There are cases specifically on point The Simon v. City of New York Says the appeal has to do with a rule of law It is a de novo appeal And there's also the AEP-GAS Where the motion for reconsideration Asks for reconsideration of the district court order Granting a motion to dismiss on the merits Such that the denial of reconsideration Was essentially an affirmance on the merits We review the merits of the argument de novo So I think in this case We have a strong position That the merits of de novo Sorry, of the raised judicata As well as all the other issues that we raised Dealing with the first Before you run out of time Can I ask you about the recordings What evidence is in those That wasn't available from the HRD investigation? Yes, Judge Park There were extensive recordings Taken by Ms. Shea And she was the village deputy clerk And she sued the village subsequently I'm aware of the context Okay, so the specific content There are They mention in these recordings The plaintiffs by name They mention Avraham Mannes They mention Tal Properties They mention other Orthodox Jews  Are those things that were already alleged In your complaint? No, no, Your Honor They were not in the first In the Tal One case at all There's a much broader situation That comes from the tapes And from the information That was given by Mr. Zumo And Ms. Ullman All of their information Was in the first case The only thing that Mr. Mannes knew Was that he had been mistreated With a particular property And he made, according to Judge Siebel He made the assumption It was because he was Jewish And not necessarily Because there was this program Of trying to diminish Or squeeze the Orthodox community In Pomona So it was more widespread Much more widespread And it encompassed many more aspects And the Endig case in particular That is a companion case We mentioned in this case Also had to do with particular individuals There was an Orthodox The first Orthodox trustee of Pomona Mayor Yagle specifically went out And ordered Zumo to put a stop work On his house And he was left without a house For over three years That case is still being litigated Aren't the materials in the tapes Set forth in the SDHR complaint That have been given to Mannes? No, Your Honor They were not in the complaint In fact, Ms. Shea Did not produce them Although she was required to In the Human Rights Commission No, no, they're not in the complaint I understand that She didn't produce them Until required to In connection with the SDHR complaint But isn't the substance of those tapes Set forth in her complaint? Yes, some of the substance is But that Human Rights complaint Was filed after the original complaint In this case And it was not available to Mr. Mannes Until after the case was dismissed So that's part of our argument as well The materials in the Human Rights Commission Investigation also were not available At the time that the Tahoe 1 case was brought She sent it to him between filing and dismissal She sent it to him in June of 2000 Let's see I'd have to check the date specifically I believe it was in June of 2018 When she sent it to him And the case was dismissed on January 10th of 2018 You've reserved a couple of minutes for rebuttal Thank you, Your Honor Good morning, Your Honors May it please the Court Irina Karchenko, I represent I'm here on behalf of all of the appellees It is the appellee's contention That the district court correctly dismissed The most recent complaint As barred by res judicata While it is the appellee's position That the abuse of discretion standard applies And then the notice of appeal Specifically limited plaintiff's appeal To the reconsideration order Depriving this court of jurisdiction To consider the earlier order It is the appellee's position also That under any standard found by the court The district court's decisions were correct With respect to the res judicata dismissal Plaintiff relied on only two prongs First one was the privity argument However, this prong was actually waived In connection with the initial motion practice Because when the defendants first moved to dismiss Plaintiff did not raise this in their opposition Effectively conceding that the privity requirement Has been satisfied When it was raised for the first time In the motion for reconsideration The district court correctly declined to consider that Because new arguments cannot be raised For the first time in a motion for reconsideration However, this argument also fails on the merits Most of the individual defendants That are named in TEL 1 Were also at some point named in TEL I apologize, in TEL 2 Were also at some point named in TEL 1 While plaintiff made a tactical decision To withdraw some of the claims With respect to some of them They cannot avoid res judicata By simply doing that And by delaying litigation indefinitely And piecemealing their allegations In any case The case law actually unequivocally shows That the officials and employees of an entity Are considered to be in privity of it With it for res judicata purposes Plaintiff's reliance on district court's case law And to argue otherwise Misconstrues the case law And misconstrues his actual allegations The distinction that was drawn By the district courts in those cases Was that those individuals Were sued in their personal capacity Because there could be a conflict of interest They acted outside of the scope And that was the consideration In this case, plaintiff's allegations Are completely devoid of any claims That any of these officials Acted outside of their scope There is no mention of the word scope There is no mention of the word conflict of interest Anywhere in the complaint So that case law doesn't apply I back you up and ask about the notice of appeal Usually we construe those liberally To encompass what they reasonably are getting at And here that seems to encompass The underlying dismissal Is that a fair...  Yes, Your Honor, the adversary's argument It is the appellee's position That the language actually expressly References the reconsideration order There is no mention of the prior order Even accepting plaintiff's counsel's argument That the original order wasn't final, etc. The notice of appeal, the document itself That seeks this court's jurisdiction Makes no mention at all of prior determination It expressly states the order denied reconsideration Is that a discretionary issue for us To read the notice of appeal strictly And say this only mentions reconsideration So that's all we're looking at Is that sort of the argument? Your Honor, it is the appellee's position That it's a jurisdictional defect So it's not subject to discretion If it's not clear on the face of the document But I'll obviously leave the court to its determination And in any case, even if we're looking at both orders The residue to cover standard has been satisfied So I'd like to move on to the other element That was raised by plaintiff That deals with where all of this stems from The same series of transactions While in the original litigation Plaintiff specifically focused only on one property Which was 22 High The newly alleged claims relate to other Unspecified subdivided properties All of those properties and those claims Are related in time, space, origin, and motivation Those properties were purchased by plaintiffs At the same time, they're located in the same exact area And in fact, they're accessed by the same roadway And they were allegedly subject to the same exact discrimination Failure to issue a certificate of occupancy Failure to delay in providing permits Threats to withdraw the certificate of occupancy Yes, but with different specifics, correct? In other words, they're similar allegations Of selective enforcement and so forth And discrimination But they are different specific enforcement issues Is that correct? Your Honor, a lot of the issues actually With respect to the properties were identical And even if they were different It is the police position that they should have been raised In the original litigation regardless Because they stem from the same nucleus of facts It's religious discrimination against Orthodox Jews In the community, by the village And its officials related to property ownership Which is exactly what 22 High was And other withholding of municipal services Which is their other subset of allegations But how could they have known? It seems like, I think your adversary's argument is From the tapes, it was much more widespread There was much more specificity than what they knew When they filed the initial complaint Your Honor, the standard to avoid regidicata By relying on evidence that was not obtained At the time of filing the initial complaint The plaintiff had to establish that They could now with due diligence Obtain this evidence This isn't what happened in this case Because in Tal 1, the complaint actually Specifically references Ms. Shea As the village clerk And indicates that she told plaintiff's principal To give a hard time to plaintiffs So clearly plaintiffs were already In communication with Ms. Shea And she was already aware of all this information That she put in the complaint Mere two months after that The plaintiffs could have gotten the tapes Through due diligence? Your Honor, the plaintiffs could have Certainly obtained the requisite information From Ms. Shea at that juncture With due diligence, yes They could have Because this was literally two months Before she commenced her human resources action And in fact, in denying plaintiff's motion To the Rule 60 motion in Tal 1 The district court expressly has indicated And has already made the determination That the tapes would not even make a difference To begin with Because the facts were sufficient Or they were insufficient But the facts were available to plaintiff To have sufficiently pled His initial Tal 1 claims And they did not establish That that additional information Made any difference or could not have been That's a different point Whether it mattered What was in there is different From whether they could have gotten them Through the exercise of due diligence And I guess my question is What kind of due diligence could they have done To get the tapes Or the information in the tapes? It seemed like she was withholding it She was acting as a whistleblower And not providing them voluntarily Until much later Your Honor, it is their police position That she, at that juncture The plaintiff's principle was In good communication And in good, I don't know If I want to use the word relationship But they had some semblance of openness At the time And Ms. O'Shea, which was evident In the plaintiff's allegation Was already whistleblowing, if you will To plaintiffs To allow him to make those statements in Tal 1 So if the plaintiff's decision Not to press her for additional information Not to obtain it at the time Doesn't change the fact That he could have done it with due diligence And that the relationship may have deteriorated When she was in suit, etc. That doesn't change That doesn't change that calculus Um So moving back to Some more claims That plaintiffs have claimed in Tal 1 That they say are unrelated to To, I mean, Tal 2 That they say is unrelated to Tal 1 Um, we refer to This court's prior determination Waldman v. Village of Curious Jewel 207 F. 3rd, 105 and 2000 Where plaintiff's initial complaint Alleged discriminatory enforcement of zoning code And then the subsequent complaint Took a bigger issue With the village entirely Alleging excessive entanglement Between government and religion This court held in that case That those new facts alleged In the second complaint Were just other instances Of the same type of conduct And it did not matter That the initial complaint Was much more focused On just discrimination And the second complaint Saw dissolution of the village This is exactly What plaintiffs' unrelated complaints In this case Unrelated allegations Um, in this case are They make generalized sweeping claims About mistreatment of And general harassment About mistreatment About Jewish residents Of the village Without specifying the plaintiff Is even actually involved in that In what it is It doesn't actually state A cognizable cause of action In and of itself It is simply used By the plaintiff To bolster their allegations With respect to their Um, initial claims And to provide other instances Of what this discrimination Could have looked like And therefore They all fall within The same ambit of Um, of res judicata Unless the panel Has any further questions for me I'll rest my brief Thank you, counsel Thank you We'll hear rebuttal Mr. Ashford You're reserved two minutes Thank you, judge Um I'll address the Towards the last argument first In terms of Waldman The Waldman case Was not a narrow case To begin with The plaintiff In that case Actually did allege There was a Massive entanglement Of Um The religious community With the Um The village government In that case And really The primary difference Between the two Was in the first He The plaintiff Had requested That Um The Um An injunction would ensue That they would That the village Would not be able To use certain Village powers To dole out And distribute Public housing Whereas in the second case They made the same Type of allegations They added that There was Um One particular Additional One or two different Uh Issues that happened And said Now this whole thing Is still Entwined Uh Entanglement between The village Government And the Religious community And therefore it should be Um Dissolved completely So really the remedy Was the primary difference In those two Cases In terms Of um Judge Seibel's Order Um That was a rule 60B Um Again Can I just jump in for a second Yes So could you explain though Is how Uh The situation That you're alleging That it It is not in fact That the additional Information Does seem like it's additional Uh Other instances I think of the The same type of conduct Is how your adversary Described it How is that not What's happening here That you're alleging A pattern In a certain number Of instances And then Uh This additional information Provides More instances Of it How is it not Thank you Judge In our first In the first case Um TA 1 The allegations Were not of a pattern And practice They were of Particular actions To a particular property To a particular Um Plaintiff And his company Whereas Um The The Uh Second The TA 2nd case Had to do with Much broader Um Discrimination Against the Orthodox community Of which Mr. Manis was a part Um The first case Didn't have to do with Necessarily orthodox Or non-orthodox It had to do with A Jewish individual The second had to do With we Learned that It was specifically Targeting orthodox Individuals And that's when Mr. Manis put together Oh I'm My part of my Business plan Is to cater to Orthodox Jews To build homes That fit the needs To kitchens You know Whatever the Issues are that Fit with orthodox Jewish practice Um And That was Uh Apparently Um Based on the new Information More of why they Were going after Mr. Manis than because Of his particular One property Um And I would direct The court Um To footnote 10 On page 36 Uh It's I believe of our Opening brief Um There's a footnote There that Um That Cites a number Of cases That show That when A person Is Um When a community Is being Discriminated against And that Uh Discrimination Affects another Individual So in other words The impact Of what Happened to Um Other individuals In the community That were trying to Drive out Orthodox Jews Make them feel Uncomfortable Prevent others From moving in Um That situation Harmed Mr. Manis and Tal Properties In particular Because of Um Because of their Desire to Cater to that Uh Community And build up An Orthodox community So that's a very Different Type of Situation Than Um What he understood At the beginning Um And those Cases also I believe Were A number Of those Cases also Were used In the Um Shea case In her Discrimination Case on Summary judgment Judge Cybell Had her Case and Judge Cybell Cited these Cases as well For the proposition That even though The religious Discrimination Against Ms. Shea She was not Jewish Um Was against The community She was Impacted Because of That Um By the Discrimination Against other People And she Had a Claim For discrimination On that Basis as Well And as Well Mr. Um Mr. Maness has That Same type Of claim In this Case Okay Thank you Counsel Thank you Judges We'll take the Case under